IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-2981 |
| GESSNER ENGINEERING, LLC, *et al.*, | § § § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

This insurance coverage case is before the Court for a decision regarding whether Everest National Insurance Company ("Everest") owes a duty to defend in a pending lawsuit by St. Paraskevi Greek Orthodox Monastery, Inc. ("Monastery") against Everest's insured Gessner Engineering, LLC ("Gessner"). Specifically pending before the Court is the Motion for Partial Summary Judgment [Doc. # 15] filed by Defendant Monastery and the Motion for Partial Summary Judgment [Doc. # 18] filed by Defendant Gessner Engineering, LLC ("Gessner"). Defendants argue that Everest owes Gessner a duty to defend. Everest filed a consolidated Response [Doc. # 26] to the two motions. The Monastery filed a Reply [Doc. # 28], and Gessner filed a separate Reply [Doc. # 31].

Also pending is Everest's Motion for Final Summary Judgment [Doc. # 17], in which it argues that it does not owe Gessner a duty to defend. The Monastery filed a Response [Doc. # 22], and Gessner filed a separate Response [Doc. # 23]. Everest filed a Reply [Doc. # 29].[1]

Having reviewed the record and applicable legal authorities, the Court **denies** Everest's Motion for Summary Judgment and **grants** the Motions for Partial Summary Judgment filed by Gessner and the Monastery.

I. **BACKGROUND**

Everest issued an Architects and Engineers Professional Liability Insurance Policy ("Policy") to Gessner for the policy period August 1, 2015 to August 1, 2016. *See* Policy, Joint Exh. 1 [Doc. # 20-3]. Everest subsequently issued a virtually

---

[1] Also pending is Gessner's Objections to and Motion to Strike Everest's Summary Judgment Evidence [Doc. # 25], to which Everest filed a Response [Doc. # 33], and Gessner filed a Reply [Doc. # 34]. Gessner then filed Objections to and Motion to Strike Everest's Supplemental Summary Judgment Evidence [Doc. # 35], to which Everest filed a Response [Doc. # 39].

Also pending is Everest's Objections to and Motion to Strike Defendant Gessner's Summary Judgment Evidence [Doc. # 30], to which Gessner filed a Response [Doc. # 38], and Everest filed a Reply [Doc. # 40]. Everest also filed Objections to and Motion to Strike the Monastery's Summary Judgment Evidence [Doc. # 32], to which the Monastery filed a Response [Doc. # 37], and Everest filed a Reply [Doc. # 41].

The Court has not considered any of the evidence to which an objection has been asserted. As a result, the Court **denies as moot** the Motions to Strike evidence from the record.

identical Policy for the policy period August 1, 2016 to August 1, 2017. *See* Policy, Joint Exh. 2 [Doc. # 20-4].[2] The Policy provides coverage for claims made against Gessner for "wrongful acts arising out of the performance of professional services" if certain conditions are satisfied. *See* Policy, Section I(A) and I(B). The Policy requires Everest to defend Gessner against "any covered claim, even if such claim is groundless, false or fraudulent." *See id.*, Section I(C).

The Monastery hired Gessner to provide civil, geotechnical, and structural engineering for a dining hall construction project referred to as the "Trapeza Project." Construction began in late February 2013.

Beginning in the spring of 2014, the Monastery noticed intermittent water seepage near the walls in the basement area of the dining hall building. In February 2015, the Monastery filed a lawsuit against Gessner and various contractors on the Trapeza Project. *See* Original Petition in Cause No. 35694, Exh. C to Complaint.[3] The Monastery voluntarily nonsuited and dismissed Gessner from the lawsuit. In January 2016, the Monastery filed a First Amended Petition in Cause No. 35694,

---

[2] The Court refers to the two policies collectively as the "Policy" unless a distinction between the two is relevant.

[3] The Original Petition in Cause No. 35694 is cited only for the purposes of background and not as evidence relied upon by the Court in reaching its decision on the duty to defend issue.

again naming Gessner as a defendant. In February 2016, the Monastery nonsuited Cause No. 35694.

In 2015, the Monastery noticed water infiltration into the basement from underneath the slab. On February 18, 2016, the Monastery filed a second lawsuit against Gessner, Cause No. 35918. Based on the Monastery's failure to attach the correct certificate of merit to the Original Petition in that case, Gessner moved to dismiss the lawsuit. On March 31, 2016, the state court dismissed Cause No. 35918 without prejudice.

On April 1, 2016, the Monastery filed a new lawsuit against Gessner, Cause No. 35961. On May 2, 2016, Gessner filed its Original Answer and Plea in Abatement in Cause No. 35961. On July 17, 2017, the Monastery filed its Second Amended Petition in Cause No. 35961. On September 14, 2016, Gessner notified Everest of Cause No. 35961 and requested a defense and indemnity under the Policy.[4] Everest agreed to provide a defense for Cause No. 35961 subject to a reservation of rights.

On October 5, 2017, Everest filed this lawsuit seeking a declaratory judgment that it does not owe Gessner a duty to defend in Cause No. 35961. Everest named Gessner and the Monastery as Defendants. Gessner filed a Counterclaim [Doc. # 9],

---

[4] The parties have stipulated that Gessner does not seek to recover defense costs incurred prior to September 19, 2016.

seeking a declaratory judgment that Everest owes it a duty to defend. The parties then filed the pending motions for summary judgment, which have been fully briefed and are now ripe for decision.

## II.    LEGAL PRINCIPLES FOR DUTY TO DEFEND

An insurer owes its insured a duty to defend if, in the underlying lawsuit, "the plaintiff's factual allegations potentially support a covered claim." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)). In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined solely by reviewing the insurance policy and the plaintiff's pleadings in the underlying lawsuit. *See id.* at 491; *see also LCS Corrections Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015); *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). The focus is on the factual allegations in the underlying complaint, not on the legal theories asserted. *See Test Masters*, 791 F.3d at 564 (citing *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014)). The Court must consider the factual allegations in the underlying complaint "without regard to their truth or falsity and resolve all doubts regarding the duty to defend in the insured's favor." *Id.* (internal quotations and ellipse omitted). If the underlying complaint "potentially

includes a covered claim, the insurer must defend the entire suit." *Id.* (quoting *Nokia*, 268 S.W.3d at 491).

If the complaint in the underlying lawsuit clearly alleges facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). If, however, it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *See Nokia*, 268 S.W.3d at 491; *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). The Court may not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Test Masters*, 791 F.3d at 564 (quoting *Gore Design*, 539 F.3d at 369).

### III. ANALYSIS

#### A. The Eight Corners

The Policy provides coverage for "damage that the Insured becomes legally obligated to pay because of claims made against the Insured for wrongful acts arising out of the performance of professional services for others." *See* Policy, Section I(A).

The Policy provides further that the "insurance applies to a wrongful act only if all of the following conditions are satisfied" and lists four separate conditions. *See id.*, Section I(B). One of the conditions is that "no insured had knowledge of such wrongful act and had no basis to reasonably anticipate a claim that would be made" prior to the inception of the Policy. *See id.*, Section I(B)(2). Another condition is that the "claim arising out of the wrongful act is first made against any Insured during the policy period."[5] *See id.*, Section I(B)(3).

The Policy defines a "claim" to mean "a demand received by the Insured for money, damages, or professional services alleging a wrongful act arising out of the performance of professional services." *See id.*, Section IV(C). The Policy defines "professional services" to mean "those services that the Insured is legally qualified to perform for others in the Insured's capacity as an" engineer. *See id.*, Section IV(J). A "wrongful act" is defined in the Policy to mean "any actual or alleged negligent act, error or omission." *See id.*, Section IV(M).

The state court petition in Cause No. 35961 was filed on April 1, 2016, within the policy period. The Monastery alleges in the state court petition that it learned at

---

[5] There is no dispute in this case that the other two conditions were satisfied: that the wrongful act took place on or after November 19, 2003, and that Gessner reported the Monastery's claim to Everest in writing no later than 60 days after the end of the policy period.

some point in 2015 that Gessner's engineering services had been deficient, causing water to seep into the dining hall basement through the foundation slab. *See* Second Amended Petition in Cause No. 35961, Joint Exh. 30 [Doc. # 20-32], ¶ 15. There is no allegation in Cause No. 35961, however, that the Monastery gave Gessner notice of this belief prior to the Policy inception date of August 1, 2015. There are no allegations that Gessner, prior to the inception date of the Policy, had knowledge of the wrongful act discovered by the Monastery in early 2015 or that Gessner had a basis to reasonably anticipate that the Monastery would assert a claim based on that wrongful act involving water seeping through the foundation slab. Indeed, although the Monastery alleges that it began to notice intermittent water seepage in the basement area of the dining hall in the spring of 2014, one of the Monastery's allegations is that Gessner failed "to identify the role of its own error in causing the water infiltration problems." *See id.*, ¶ 14. There is no mention in Cause No. 35961 that the Monastery filed prior lawsuits against Gessner. *Cf. Reeves Cnty. v. Houston Cas. Co.*, 356 S.W.3d 664, 673 (Tex. App. – El Paso 2011, no pet.) (petition that was the focus of the eight-corners rule mentioned the prior claim).

The allegations in Cause No. 35961 raise the potential that the Monastery first gave Gessner notice during the policy period of the claims for professional negligence in connection with the water seeping through the slab into the dining hall basement.

There are no allegations in Cause No. 35961 that Gessner had knowledge, prior to the inception date of the Policy, of the alleged wrongful act relating to the water infiltration through the foundation slab or had a basis reasonably to anticipate that the Monastery would assert a claim against it regarding the water seeping into the dining hall basement through the slab.[6] Therefore, based only on the Policy language and the allegations in Cause No. 35961, the Monastery's professional negligence claim against Gessner is potentially within the Policy's scope of coverage and Everest has a duty to defend.

### A. Exception to Eight-Corners Rule

Everest argues that the Court should apply an exception to the eight-corners rule to allow extrinsic evidence of the prior lawsuits by the Monastery against Gessner. "Despite various requests over the years to recognize exceptions to the eight-corners rule, the Supreme Court of Texas has never done so." *Allstate Cnty. Mut. Ins. Co. v.*

---

[6] The absence of allegations in Cause No. 35961 that Gessner had knowledge, prior to the inception date of the Policy, of the alleged wrongful act relating to the water infiltration through the foundation slab or had a basis reasonably to anticipate that the Monastery would assert a claim against it regarding the water seeping into the dining hall basement through the slab precludes application of the fortuity doctrine. *See Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App. – Fort Worth 2006, rev. denied) (the fortuity doctrine precludes insurance coverage for "those situations where the insured knows, or should know, of a loss that is ongoing at the time the policy is issued"); *Burlington Ins. Co. v. Texas Krishnas, Inc.*, 143 S.W.3d 226, 230 (Tex. App. – Eastland 2004, no pet.) (when dealing with the duty to defend, the court focuses only upon those facts that are alleged in the pleadings in the underlying lawsuit).

*Wootton*, 494 S.W.3d 825, 833 (Tex. App. – Houston [14th Dist.] 2016, review denied) (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654-56 (Tex. 2009)). In 2006, the Texas Supreme Court discussed the possibility of recognizing an exception to this rule, but it did not do so. *See GuideOne*, 197 S.W.3d at 309. Since that time, the Texas Supreme Court has continued to adhere to the eight-corners rule. *See Wootton*, 494 S.W.3d at 834 (citing *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012); *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 334 S.W.3d 217, 219 (Tex. 2011); *D.R. Horton-Texas Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008)).

In *GuideOne*, the Texas Supreme Court noted that the Fifth Circuit observed that if Texas were to recognize any exception to the eight-corners rule, it would be a limited exception – "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *GuideOne*, 197 S.W.3d at 309 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) (emphasis in original)). In *GuideOne*, the insurance policy provided coverage

for sexual misconduct occurring during the policy period. *See id.* at 307. The insurer sought to introduce extrinsic evidence that the individual alleged to have engaged in the sexual misconduct left the insured's employ before the policy's effective date. *See id.* at 308. The Texas Supreme Court held that the proffered extrinsic evidence was relevant to both coverage and the merits and, therefore, did not fall within the limited exception to the eight-corners rule. *See id.* at 309. The Texas Supreme Court in *GuideOne* rejected "the use of overlapping evidence as an exception to the eight-corners rule because it poses a significant risk of undermining the insured's ability to defend itself in the underlying litigation." *See id.*

In *Wootton*, the Texas Court of Appeals refused to apply an exception where the proffered extrinsic evidence demonstrated that the workers' compensation exclusion applied. *See Wootton*, 494 S.W.3d at 835. The Texas court held that, based on the allegations in the underlying lawsuit, it was "not *impossible* to discern whether coverage is *potentially* implicated." *Id.* (emphasis added).

In a case in the Eastern District of Texas, which this Court finds both similar and well-reasoned, the court twice held that no exception to the eight-corners rule applied to the duty to defend analysis under a claims-made policy. *See Corinth Investors Holdings, LLC v. Evanston Ins. Co.*, 2014 WL 4222168 (E.D. Tex. Aug. 25, 2014) (Clark, J.); *Corinth Investors Holdings, LLC v. Evanston Ins. Co.*, 2015

WL 1321616 (E.D. Tex. Mar. 24, 2015) (Mazzant, J.). In those opinions, the district court held that it was not impossible to discern whether coverage was potentially implicated because the lawsuit was filed and served on the insured within the policy period. *See Corinth*, 2015 WL 1321616 at *4; *Corinth*, 2014 WL 4222168 at *10. The Eastern District court noted that it had "to find only that the claim is potentially within the insurance policy's scope of coverage to establish a duty to defend." *Corinth*, 2015 WL 1321616 at *4.

The Court declines to apply an exception to the eight-corners rule in this case because, as explained above, it is not *impossible* to discern whether coverage under the Policy is *potentially* implicated by the allegations in Cause No. 35961. Therefore, even were the Texas Supreme Court to recognize the exception to the eight-corners rule, as the Fifth Circuit has suggested, that limited exception would not apply in this case.

## IV. <u>**CONCLUSION AND ORDER**</u>

Coverage under the Policy is potentially implicated by the claims asserted in the Second Amended Complaint in Cause No. 35961. As a result, under the eight-corners rule, Everest has a duty to defend Gessner in that lawsuit. It is hereby

**ORDERED** that Everest's Motion for Final Summary Judgment [Doc. # 17] is **DENIED**. It is further

**ORDERED** that the Monastery's Motion for Partial Summary Judgment [Doc. # 15] and Gessner's Motion for Partial Summary Judgment [Doc. #18] are **GRANTED** to the extent that Everest owes Gessner a duty to defend in Cause No. 35961. It is further

**ORDERED** that the Motions to Strike [Docs. # 25, # 30, # 32, and # 35] are **DENIED AS MOOT**. It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending a final decision in Cause No. 35961. Counsel are directed to file a joint status report on **November 15, 2018**, and every four (4) months thereafter, until a final decision is entered in Cause No. 35961 and, if appropriate, this case is reinstated on the Court's active docket for resolution of any duty to indemnify issue.

SIGNED at Houston, Texas, this **10th** day of **July, 2018.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE